IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JARED BREEN      :

   v.      :  Civil Action No. DKC 18-1943

7TH INNING STRETCH, LP, et al.      :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this negligence case are: (1) a motion to dismiss filed by Defendant Wicomico County, Maryland ("Wicomico County") (ECF No. 12), and (2) a motion for waiver of notice under the Maryland Local Government Torts Claims Act ("LGTCA"), MD. CODE, Cts. & Jud. Proc. § 5-304 (2014), filed by Plaintiff Jared T. Breen (ECF No. 16).

Prior to the 2015 amendment, Section 5-304(b) of the LGTCA stated that "an action for unliquidated damages may not be brought against a local government or its employees unless notice of the claim required by this section is given within 180 days after the injury." Because Wicomico County is a county, the LGTCA requires notice to be given either in person or via certified mail, return receipt requested, "to the county commissioners or county council of the defendant local government." §§ 5-304(c)(1)-(2). The notice requirement operates as a condition precedent to the claimant's right to maintain a tort action for damages under

Maryland law, *Grubbs v. Prince George's Cty.*, 267 Md. 318, 320-21 (1972), and failure to comply with it will bar such tort claims, *see Renn v. Bd. Of Comm'rs*, 352 F.Supp.2d 599, 602 (D.Md. 2005); *Bibum v. Prince George's Cty.*, 85 F.Supp.2d 557, 566 (D.Md. 2000).

The purpose of the LGTCA is:

> to protect the municipalities and counties of the State from meretricious claimants and exaggerated claims by providing a mechanism whereby the municipality or county would be apprised of its possible liability at a time when it could conduct its own investigation, i.e., while the evidence was still fresh and the recollection of the witnesses was undiminished by time, "sufficient to ascertain the character and extent of the injury and its responsibility in connection with it."

*Williams v. Maynard*, 359 Md. 379, 389-90 (2000). The Court of Appeals of Maryland has held that "strict compliance with the notice provisions of the LGTCA is not always required; substantial compliance may suffice." *Moore v. Norouzi*, 371 Md. 154, 171 (2002). In addition to the substantial compliance doctrine, the notice requirement of the LGTCA may be waived for good cause and lack of prejudice to the defendant. § 5-304(d).

For the following reasons, the motion to dismiss will be granted in part as to Plaintiff's lack of substantial compliance with the LGTCA notice requirement, but deferred as to whether Plaintiff has established good cause and whether the notice requirement should be waived. An evidentiary hearing will be scheduled to resolve the disputed factual issues.

## I. Background

Plaintiff alleges the following in the Amended Complaint: After being drafted by the Major League Baseball team the Baltimore Orioles ("Orioles") in 2013, Plaintiff was directed to play for the Orioles' minor league affiliate — the Delmarva Shorebirds ("Shorebirds") — for the 2014 and 2015 seasons. (ECF No. 9 ¶¶ 6-7). The Shorebirds are owned by Defendant 7th Inning Stretch ("7th Inning") and play their home games in Arthur W. Perdue Stadium ("the Stadium") outside Salisbury, Maryland. (*Id.* ¶¶ 7-8). Defendant Wicomico County owns the Stadium, and Plaintiff alleges that 7th Inning "operates and/or leases the Stadium pursuant to an agreement with Wicomico County." (*Id.* ¶¶ 8 & 10). Wicomico County "planned, designed, developed, and oversaw" construction of the Stadium. (*Id.* ¶ 9). The Stadium includes a six-foot high concrete wall that runs parallel with the third-base foul line and separates the spectator seating area from the field. (*Id.* ¶ 11). At the time of the incident prompting this action, the concrete wall was unpadded, leaving the vertical concrete face exposed to the field of play. (*Id.* ¶ 12).

On July 3, 2015, during a Shorebirds game at the Stadium, Plaintiff — playing shortstop — chased after a baseball that was hit toward the third-base outfield. (*Id.* ¶ 14). Plaintiff claims that he was tracking the baseball in the air with his head looking over his shoulder toward home plate. (*Id.* ¶ 15). While Plaintiff

was focused on the baseball and running underneath its arc, he crashed into the concrete wall. (*Id.*). In the collision, Plaintiff fractured his right patella, punctured his sinus, cracked his orbital bone, injured his back, and suffered a concussion. (*Id.* ¶ 18). Plaintiff alleges that he has not recovered entirely from his injuries and the collision has left him permanently partially disabled. (*Id.* ¶ 19).

According to Plaintiff's affidavit, Plaintiff underwent surgery on July 7, 2015, spent a week in the hospital recovering, and then traveled home to Atlanta, Georgia. (ECF No. 16-2, at 2). For the next two weeks, Plaintiff's movement was restricted to facilitate healing post-surgery. (*Id.*, at 3). For the next several weeks thereafter, Plaintiff took the prescription drug OxyContin to manage pain. (*Id.*). Plaintiff returned to Baltimore on August 18, 2015, for a post-operative examination by his surgeon. (*Id.*). Following that visit, Plaintiff returned home to Atlanta where he continued recovery. (*Id.*). Plaintiff was released by the Orioles on November 19, 2015. (*Id.*). Until his release, Plaintiff coordinated with the Orioles for his medical treatments and workers' compensation benefits. (*Id.*). Plaintiff states that: "Until the date I was released by the Orioles, I had every hope of being able to continue playing professional baseball. After those hopes were dashed and immediately following the intervening holidays, I acted promptly to identify and retain

counsel to pursue my legal remedies." (*Id.*, at 4). Unbeknownst to Plaintiff, the deadline to provide notice under the LGTCA passed on December 30, 2015. (*Id.*, at 4). Plaintiff retained legal counsel on January 29, 2016, who allegedly effectuated notice under the LGTCA. (*Id.* & 15-1).[1]

Plaintiff filed a complaint against Wicomico County and 7th Inning on June 27, 2018, alleging negligence as to both Defendants and negligent design and construction as to Wicomico County. (ECF No. 1). Wicomico County filed a motion to dismiss on August 24, 2018 (ECF No. 5), arguing that Plaintiff failed to provide notice of the claim to the Wicomico County Council within 180 days after the injury, as mandated by the LGTCA.[2] (ECF No. 5-1, at 3-4).

Plaintiff filed an amended complaint on August 20, 2018, adding that he sent notice of his claim to the Wicomico County Council via certified mail on February 24, 2016 and that Wicomico County did not suffer prejudice because of the delay. (ECF No. 9 ¶ 3). Wicomico County moved to dismiss the amended complaint on September 25, 2018, renewing its claim of lack of notice. (ECF No. 12). Additionally, Wicomico County attached an affidavit from

---

[1] The letter is dated "February 22, 2015." The year is an obvious typographical error. The attached return receipt is dated in 2016.

[2] At the time of the injury, the notice period was 180 days. For any claims arising after October 1, 2015, the notice period is one year. *See* 2015 Md. Laws Ch. 131.

5

its Risk Manager — the person who evaluates claims made against the county — which states that Wicomico County never received notice of a claim from Plaintiff regarding the incident on July 3, 2015. (ECF No. 12-2). On October 8, 2018, Plaintiff opposed Wicomico County's motion to dismiss (ECF No. 15) and filed a motion for waiver of notice, requesting that the court waive the LGTCA's notice requirement.[3] (ECF No. 16). Plaintiff's counsel provides a declaration in support of Plaintiff's opposition to Wicomico County's motion to dismiss, explaining why Plaintiff failed to comply with the LGTCA's notice requirement. (ECF No. 15-1). Additionally, Plaintiff appends his own affidavit and a letter, purportedly sent to the Wicomico County Council on February 22, 201[6], notifying the council of Plaintiff's claim. (ECF Nos. 16-2 & 16-3). Wicomico County replied to Plaintiff's opposition to the motion to dismiss (ECF No. 17) and filed an opposition to Plaintiff's motion for waiver of notice (ECF No. 18), attaching screenshots of Plaintiff's Twitter account (ECF No. 18-2), on October 22, 2018. Plaintiff replied on November 1, 2018. (ECF No. 19).

---

[3] The motion for waiver of notice fulfills the statutory motion requirement in § 5-304(d): "Notwithstanding the other provisions of this section, unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given." *See Curtis v. Pracht*, 202 F.Supp.2d 406, 414 (D.Md. 2002).

6

## II. Analysis

Defendant argues that Plaintiff failed to comply with the strict notice provision under the LGTCA and has not established good cause consistent with Maryland law to abrogate the requirement. (ECF No. 18-1, at 2-4). Plaintiff argues that dismissal is inappropriate because (1) he substantially complied with the notice requirement (ECF No. 16-1, at 6), and (2) the good cause exception in § 5-304(d) applies (*id.*, at 4-6).

### A. Applicability of the "Substantial Compliance" Doctrine

A plaintiff "substantially complies with the LGTCA notice requirement where: (1) the plaintiff makes 'some effort to provide the requisite notice'; (2) the plaintiff does 'in fact' give some kind of notice; (3) the notice 'provides . . . the requisite and timely notice of facts and circumstances giving rise to the claim'; and (4) the notice fulfills the LGTCA's purpose." *Ellis v. Hous. Auth. of Balt. City*, 436 Md. 331, 342-43 (2013) (ellipsis in original) (quoting *Faulk v. Ewing*, 371 Md. 284, 298-99 (2002)).

Maryland courts have provided guidance regarding what constitutes timely notice of the facts and circumstances of the injury. A Maryland appeals court held that a plaintiff may not rely on the substantial compliance doctrine when he sent a letter "between a month and six weeks beyond the 180-day statutory period." *Wilbon v. Hunsicker*, 172 Md.App. 181, 200 (2006). The court agreed with the defendant that, "although 'a claimant may

7

comply substantially with a notice requirement by giving notice to a person not specified in the statute or by regular rather than certified mail, the courts have not held that a claimant may submit the notice beyond the time for giving such notice.'" *Id.* In fact, it appears substantial compliance has only been found in the context of delayed notice when a written notice of a claim was mailed on the 180th day but received on the 181st day following injury. *See Grubbs*, 267 Md. at 325. Indeed, the substantial compliance doctrine only exists to provide leniency for claimants who attempt to give notice but "not necessarily in a manner technically compliant with all of the terms of the statute." *Faulk*, 371 Md. at 299 (concluding there was substantial compliance even though the notice did not "include an envelope or other indicia of a postmark by the United States Postal service," and did not appear to be "sent via certified mail[.]"); *Jackson v. Bd. of Cty. Comm'rs of Anne Arundel Cty.*, 233 Md. 164, 168 (1963) (finding there was substantial compliance even though claimant did not deliver the notice in person or via registered mail).

Even assuming that notice was sent fifty-four days after the required LGTCA deadline, as stated in the amended complaint, Plaintiff still failed substantially to comply with the LGTCA notice requirement. Accordingly, Defendant's motion to dismiss will be granted as to Plaintiff's lack of substantial compliance.

**B. Applicability of the "Good Cause" Exception**

Plaintiff argues that "there is good cause for the [] delay in delivery of statutory notice." (ECF No. 16-1, at 6). Section 5-304(d) provides:

> Notwithstanding the other provisions of this section, unless the defendant can affirmatively show that its defense has been prejudiced by lack of required notice, upon motion and for good cause shown the court may entertain the suit even though the required notice was not given.

Under this exception, the Plaintiff bears the burden to show good cause for lack of compliance. *See Rounds v. Maryland-Nat. Capital Park & Planning Comm'n*, 441 Md. 621, 645 (2015) ("Where a plaintiff fails to comply with the notice requirement, it is the plaintiff's burden to demonstrate 'good cause.'"). Good cause exists where "the claimant prosecuted his claim with that degree of diligence that an ordinarily prudent person would have exercised under the same or similar circumstances." *Heron v. Strader*, 361 Md. 258, 271 (2000). A defendant's "burden to show prejudice does not arise until a plaintiff establishes 'good cause' to justify the failure to comply with the notice requirement." *Curtis*, 202 F.Supp.2d at 414 (citing *Martino v. Bell*, 40 F.Supp.2d 719, 720 (D.Md. 1999); *Downey v. Collins*, 866 F.Supp. 887, 889–90 (D.Md. 1994)); *see also Huggins v. Prince George's County Md.*, 683 F.3d 525 (4th Cir. 2012).

Maryland courts have recognized several factors to consider when determining if "good cause" exists under the LGTCA, including:

9

> [1] excusable neglect or mistake (generally determined in reference to a reasonably prudent person standard),
>
> [2] serious physical or mental injury and/or location out-of-state,
>
> [3] the inability to retain counsel in cases involving complex litigation[,]
>
> [4] ignorance of the statutory notice requirement[,] or
>
> [5] misleading representations made by [a] representative of the local government.

*Wilbon*, 172 Md.App. at 205-06 (internal quotation marks omitted); *see Heron*, 361 Md. at 272. Notably, ignorance of the notice requirement, by itself, has been rejected as a cognizable factor showing good cause. *Wilbon*, 172 Md.App. at 206 n.15; *see also Bibum*, 85 F.Supp.2d at 565-66 (the fact that Plaintiff "simply did not know about the formal notice requirement of the LGTCA does not constitute good cause for his failure to comply."); *Gower v. Smith*, No. 833, Sept. Term, 2017, 2018 WL 2331995, at *12 n.4 (Md.Ct.Spec.App. May 23, 2018) ("ignorance of the law *alone* may not constitute good cause.") (emphasis in original).

Plaintiff advances three explicit reasons in support of his good cause: (1) Plaintiff was seriously injured and located out-of-state, (2) Plaintiff was seeking legal counsel, and (3) Plaintiff was unaware of the LGTCA notice requirement. (ECF No. 16-1, at 6-9). Plaintiff also argues for good cause under the excusable neglect prong throughout his motion and opposition.

(*See, e.g.*, *id.*, at 7) ("When all of Breen's circumstances between the time of the accident and his retention of counsel are taken into account, it simply cannot be said that he was not diligent or that he did not take reasonably prompt action to pursue his legal claims once his medical issues stabilized."). Plaintiff does not argue that he was misled by a representative of the local government.

Whether Plaintiff is entitled to a waiver for good cause under the LGTCA turns, in part, on whether he provided the requisite notice, albeit fifty-four days late. The parties present conflicting affidavits and evidence. Defendant attached an affidavit from David Fitzgerald, the Risk Manager for Wicomico County. (ECF No. 12-2). Mr. Fitzgerald states that he "caused the records of claims made to Wicomico County to be searched thoroughly" and attests that "Wicomico County has never received a notice of claim from Jared T. Breen, or on behalf of Jared T. Breen[.]" (*Id.*, at 2). Plaintiff's counsel provides a competing declaration, stating that he sent a claim letter via certified mail to Wicomico County on February 22, 2016, and that the letter was received and acknowledged by an authorized representative thereof. (ECF No. 15-1, at 3). Plaintiff's counsel attaches the purported letter and a certified mail receipt signed by Dawn Luchaco. (*Id.*, at 4-5). Additionally, Plaintiff's affidavit affirms that his counsel sent a claim letter to Wicomico County.

(ECF Nos. 16-2 & 16-3). Moreover, Defendant disputes Plaintiff's assertions as to the nature and extent of his injuries in the months after the incident. Accordingly, an evidentiary hearing will be held to determine whether Plaintiff provided notice to Wicomico County and whether he has demonstrated good cause.

## III. Conclusion

For the foregoing reasons, Defendant's motion to dismiss will be granted in part and the parties will be directed to appear before the court for an evidentiary hearing to resolve the remaining factual questions. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
